FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2015 MAR -9  AM 11: 26

CLERK'S OFFICE
AT BALTIMORE

BY_____DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JOHN DOE NO. 93 | : | |
| | : | |
| v. | : | Civil No. CCB-15-244 |
| | : | |
| ROMAN CATHOLIC DIOCESE OF BROOKLYN | : | |

## MEMORANDUM ORDER

John Doe No. 93 alleges that a Catholic priest, Father William Authenrieth, sexually abused him when he was an altar boy at a Florida Catholic school in the Diocese of Orlando. (Mot. Compel Ex A, Compl. ¶¶ 9–10, ECF No. 1-2.) Doe has sued the Roman Catholic Diocese of Brooklyn in the Eastern District of New York on a theory of negligence, invoking that court's diversity jurisdiction. (*See id.* at ¶ 6.) There, he alleges that the Diocese of Brooklyn transferred Authenrieth to the Diocese of Orlando with knowledge that Authenrieth posed a sexual threat to minors but without warning or otherwise protecting parishioners of the Diocese of Orland from that danger. (*See id.* at ¶¶ 23–24.) Doe now moves for an order compelling a nonparty, the Saint Luke Institute, Inc., to produce Authenrieth's mental health records for this court's in camera review. *See* Fed. R. Civ. P. 37(a)(2).[1]  The Saint Luke Institute opposes that motion. Although Authenrieth has received notice of the motion, (*see* ECF Nos. 4, 6), he has not responded to it.

The Saint Luke Institute is a mental health facility in Maryland that specializes in caring for priests, including the treatment of clerics accused of sexually abusing minors. (*See* Mot.

---

[1] Doe's initial motion sought outright production "or, at a minimum, . . . an *in camera* review . . . to determine if any [records] should be produced." (Mot. Compel 6, ECF No. 1.) Doe falls back on that alternative position in his reply, seeking only production to the court for in camera inspection. (*See* Reply Mot. Compel 3, ECF No. 11.)

1

Compel Ex. 5, Doyle Aff. ¶ 8, ECF No. 1-6.) Its personnel evaluated Authenrieth for several days in November 1985. (*See* Opp. Mot. Compel 2, ECF No. 10.) According to an affidavit appended to Doe's motion, an evaluation at the Saint Luke Institute typically requires assessing a priest's "psychosocial history" and "sexual development history," among other things. (Doyle Aff. ¶ 11.) That sexual development history, in turn,

> includes information about sexual experiences other than those that are the initial focus of the assessment, i.e., those for which the priest was sent for the evaluation. The information on sexual encounters sometimes includes information on reports made to bishops or religious superiors by the victim, parents or other interested parties. It also includes information about self-reports the priest made to his pastor, bishop or other officials in his diocese.

(*Id.* at ¶ 16.) Accordingly, Doe argues, Authenrieth's records may reveal what the Diocese knew or should have known of the dangers Authenrieth posed to minors. (*See* Mot. Compel 4.)

Under the Maryland statute, "[r]ecords containing information about communications between the patient and psychiatrist or psychologist are presumptively privileged." *Reynolds v. State*, 633 A.2d 455, 463 (Md. Ct. Spec. App. 1993); Md. Code Ann., Cts. & Jud. Proc. § 9-109(b)(1). *See also* Fed. R. Evid. 501.[2] "[L]ike all other personal privileges," that privilege "may be waived by the . . . disclosure to third parties" of the contents of the relevant communications between the psychiatrist and patient. *Sears, Roebuck & Co. v. Gussin*, 714 A.2d 188, 194 (Md. 1998) (discussing the accountant-client privilege, but relying in part on a case discussing the psychiatrist-patient privilege). Doe asserts that Authenrieth waived his privilege

---

[2] Both the federal Health Information Portability and Accountability Act ("HIPAA") and the Maryland statute authorize disclosure of private health records upon court order. *See* 45 C.F.R. 164.512(e)(1)(i); Md. Code Ann., Health-Gen. § 4-307(k)(1)(iv)(1); *see also* Md. Code Ann., Health-Gen. § 4-306(b)(6)(i)(3). The Maryland statute does not trump the patient-therapist privilege, which it expressly incorporates. *See* Md. Code Ann., Health-Gen. § 4-307(k)(1)(iv). And HIPAA does not preempt state privacy standards "more stringent" than those incorporated into federal law. 45 C.F.R. § 160.203(b). A state standard is "more stringent" where, as here, it "provides greater privacy protection for the individual who is the subject of the individually identifiable health information." 45 C.F.R. § 160.202(6).

by disclosing his mental health assessment to his religious superiors. For support, he relies on an affidavit appended to his motion. After the Saint Luke Institute evaluated a priest, that affidavit explains, "[t]he cleric's bishop or religious superior or a representative is asked to be present" at a meeting summarizing the results of the evaluation, and that third party receives a physical copy of the written assessment. (Doyle Aff. ¶ 10.) To facilitate such involvement, "[t]he cleric is asked to sign a waiver of confidentiality at the outset" of his time at the facility. (*Id.* at ¶ 10.) Authenrieth seems to have waived his privilege in similar circumstances. In a parallel proceeding brought against the Diocese of Orlando in a Florida court, for example, the court ordered the production of Authenrieth's mental health records from a different facility on the ground that Authenrieth waived any privilege by allowing the Diocese of Orlando to review his records. (*See* Mot. Compel Ex. 6, Order Granting Mot. Compel 2, ECF No. 1-7.)

Where a party offers evidence "that there is a substantial possibility that . . . the particular records, or a portion thereof are not privileged," the court may review those records in camera to evaluate that claim. *Reynolds*, 633 A.2d at 464–65.[3] The affidavit Doe appends to his memorandum satisfies that standard. The Saint Luke Institute argues that the production of those records would violate the constitutional right to privacy. It does not, however, argue that any such right exists where a patient has waived his privacy. Accordingly, if the court concludes after in camera review that Authenrieth has waived his privacy here, then that conclusion will moot the Saint Luke Institute's objection. *Cf. id.* at 463 (recognizing both a constitutional right

---

[3] The result would be no different if federal procedural law, rather than Maryland law, guided evaluation of the existence of a substantive privilege under state law, as some federal district courts have held. *See, e.g., In re Fed. Skywalk Cases*, 95 F.R.D. 477, 478–79 (W.D. Mo. 1982). Where, for example, a party asserts that the crime-fraud exception to the attorney-client privilege renders certain evidence admissible, it may obtain in camera review of those materials by showing "a factual basis adequate to a support a good faith belief by a reasonable person" in its position. *United States v. Zolin*, 491 U.S. 554, 572 (1989) (quoting *Caldwell v. Dist. Court*, 644 P.2d 26, 33 (Colo. 1982)). *See also* 9A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2458 (3d ed. 2008) ("Whenever the court believes it is appropriate to do so, it can examine requested documents in camera to determine whether they are protected by a privilege.").

3

to privacy and the in camera review process adopted here).[4] Accordingly, Doe's motion to compel, (ECF No. 1), is **GRANTED** to the extent it seeks in camera review. The Saint Luke Institute shall produce Authenrieth's records under seal to this court for its inspection within seven days of the issuance of this memorandum order. After reviewing those sealed records, the court will evaluate whether consultation with counsel would be useful.

3/9/15
Date

/s/ CCB
Catherine C. Blake
United States District Judge

---

[4] The court need not and does not reach Doe's broader argument that communications concerning child abuse are never privileged. *See* Md. Code Ann., Fam. Law 5-704(a).